FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JUL 20  AM 8: 39

LORETTA G. WHYTE
        CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD RAY JAMES #94262** | **CIVIL ACTION** |
| versus | **NO. 03-3368** |
| **BURL CAIN, WARDEN** | **SECTION: "N" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

DATE OF MAILING __JUL 2 0 2004__

DATE OF ENTRY
JUL 2 0 2004

___ Fee _____
___ Process ___
 X  Dktd _____
___ CtRmDep ___
___ Doc. No. ___

Petitioner, Donald Ray James, is a state court prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.

By bill of information in case number 388-996 on the docket of the Orleans Parish Criminal District Court, petitioner was charged with simple burglary of an inhabited dwelling in violation of La.Rev.Stat.Ann. § 14:62.2. Petitioner was arraigned in that proceeding on April 16, 1997.[2] On June 21, 1997, the state entered a *nolle prosequi* in that proceeding.[3]

By bill of information in case number 390-919, the state reinstituted the action against petitioner on the same charge on July 22, 1997.[4] On April 20, 1998, a jury found petitioner guilty of simple burglary of an inhabited dwelling in violation of La. Rev. Stat. Ann. § 14:62.2.[5] On January 7, 2000, petitioner was found to be a third offender and was sentenced as such to a term of life imprisonment, without the benefit of parole, probation, or suspension of sentence, with credit for time served.[6] Petitioner filed a direct appeal, and his conviction and enhanced sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on September 27, 2000.[7] Petitioner then

---

[2] State Rec., Vol. II of II, docket master, case number 388-996.

[3] State Rec., Vol. II of II, docket master, case number 388-996. A copy of the actual minute entry is attached to petitioner's federal application. Rec. Doc. 2.

[4] State Rec., Vol. I of II.

[5] State Rec., Vol. I of II, transcript of April 20, 1998, pp. 56-57; State Rec., Vol. I of II, minute entry dated April 20, 1998.

[6] State Rec., Vol. I of II, transcript of January 7, 2000, pp. 9-11.

[7] State v. James, 99-KA-1482 (La. App. 4th Cir. Sept. 27, 2000) (unpublished); State Rec., Vol. I of II.

filed with the Louisiana Supreme Court an application for a writ of certiorari[8] which was denied on November 2, 2001.[9]

On or about January 22, 2002, petitioner filed with the state district court an application for post-conviction relief.[10] Although its ruling does not appear in the record filed with this Court, the state district court apparently denied that application. Petitioner then filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ. On August 23, 2002, the intermediate appellate court denied that application.[11] Petitioner next filed with the Louisiana Supreme Court an application for a writ of certiorari[12] which was denied on October 3, 2003.[13]

---

[8] State Rec., Vol. II of II.

[9] State v. James, 800 So.2d 867 (La. 2001) (No. 2000-KO-3237); State Rec., Vol. I of II.

[10] State Rec., Vol. II of II. Although the state record does not reflect when the application was actually filed, it was signed by petitioner on January 22, 2002.

[11] State v. James, No. 2002-K-1581 (La. App. 4th Cir. Aug. 23, 2002) (unpublished opinion); State Rec., Vol. II of II.

[12] State Rec., Vol. II of II.

[13] State ex rel. James v. State, 855 So.2d 302 (La. 2003) (No. 2002-KH-2564). The Court notes that this summary of the state court proceedings is incomplete because the state has failed to produce a complete state court record as ordered. For example, the state district court record has not been filed with this Court. (However, the proceedings in the state district court up to the point of the conviction are reproduced in the intermediate appellate court's records from the direct appeal which are included in Vol. I of the state court record.) In addition, the Court notes that petitioner has attached to his federal application rulings from the Louisiana Fourth Circuit Court of Appeal in case numbers 2001-K-2235 and 2002-K-1301 which relate to this conviction. The state records of those proceedings have likewise not been provided. Nevertheless, despite the state's violation of this Court's order to provide a complete record, which it is cautioned to do in the future, the record is sufficient for the Court to make a determination on the issues petitioner raises in this federal application.

On October 18, 2003, petitioner filed this application for federal *habeas corpus* relief.[14] In support of his application, petitioner claims:

1. Petitioner was never arraigned on the charge of which he was convicted;[15]

    and

2. Petitioner was tried in violation of the United States Constitution's prohibition against double jeopardy.

The state concedes that petitioner's federal application is timely and that he has exhausted available state court remedies with respect to his claims.[16]

## Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly

---

[14] Rec. Doc. 2.

[15] In connection with this claim, petitioner contends without elaboration that his jury was unconstitutionally selected and empaneled. Because it appears that petitioner's argument is that this alleged error stemmed from the failure to hold an arraignment, the Court does not consider the allegation regarding the jury to be a separate claim for relief.

[16] Rec. Doc. 7, pp. 2-3.

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## Facts

The Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> New Orleans Police Officer Scott Rayford testified that on the night of February 12, 1997, he and his partner, Officer Terry Demesme, responded to a burglary call on Soraparu Street. Upon their arrival at the scene, some three to four minutes after receiving the call, Officer Rayford observed defendant exiting the residence through the front door. Defendant saw the officers, and turned around and went back into the residence. Officer Rayford stationed himself at the front door, while Officer Demesme went to the rear of the residence. Officer Rayford subsequently heard breaking glass, followed by a gunshot, and called for backup, noting that shots had been fired. Other police units responded immediately, and defendant was apprehended in the grassy area of a vacant lot adjacent to the residence, on the other side of a chain link fence. Officer Rayford determined that the point of entry was through a shattered window on the front left side of the

residence, which had been broken from the outside inward. The point of exit, at the rear of the residence, was also a window. Officer Rayford identified photographs of the scene taken that night. Officer Rayford testified on cross examination that he did not see defendant inside of the residence after defendant went back through the front door, and did not see him exit.

New Orleans Police Officer Terry Demesme testified that the night in question was very rainy and stormy. He said that when he and Officer Rayford arrived, there was a white male out front, who, it was later learned, lived in an apartment behind the victim's residence. He said that as he walked to the rear of the residence, he heard someone running inside. As he reached the rear of the residence, he saw the person coming out of the back door. The individual saw the officer and went back into the residence. Officer Demesme subsequently heard glass breaking, and saw the individual coming out of a window, with what the officer believed to be a firearm in his hand. The individual pointed the firearm at the officer, who responded by firing a single shot at the individual. The individual jumped onto a fence next to the dwelling, and then over the fence. The entire block was then secured by police. Officer Demesme said he saw someone in the residence, and saw someone come out of the residence, but could not identify defendant as that person.

New Orleans Police Officer Russell C. Philibert testified that he responded to a call for assistance at 418 Soraparu Street on the night of February 12, 1997. He and other officers surrounded the area and began systematically searching it. He noticed a fence very close to the side of the residence, near a broken-out window, and speculated that someone escaping through that window would have gone over the fence. He began searching the lot next door with Officer Kyle Hinrichs, and heard Officer Hinrichs order someone to put his or her hands up. Officer Philibert went to assist Officer Hinrichs, who had to use pepper spray to subdue the individual, who turned out to be defendant. Officer Philibert testified that it was pouring down rain that mid-February night, and the temperature was approximately twenty-five degrees. Officer Philibert testified on cross examination that he believed that defendant was the person who had been in the residence, but admitted that he had not seen him either inside of the dwelling or coming out of it.

Lynell Zelenka testified that she was residing at 418 Soraparu Street on February 12, 1997. That night she was in bed with a cold watching television, when her new puppy started barking. Ms. Zelenka heard glass breaking and realized someone was coming into the house. She screamed, hoping to frighten the person away, but ran out the back door when her screams failed to halt the intruder's advance. She knocked on her landlord's door and asked him to call police. She said police arrived in three to five minutes. Ms. Zelenka said her purse was stolen, but it was recovered by police outside of the house. She said the purse and contents – her driver's license, passport, traveler's checks, and a watch – had gotten very wet. Ms. Zelenka said she did not know defendant, and had never given him permission to enter her residence. She stated on cross examination that she had no way of knowing

if there had been more than one person in her residence, and did not know who had been in her residence because she never saw the person or persons.[17]

### Failure to Arraign

Petitioner claims that his constitutional rights were violated because he was never arraigned on the charge for which he was convicted.

The state alleges that, despite the failure of the state record to reflect such an arraignment, it is unlikely that petitioner proceeded to trial without being arraigned. Moreover, the state argues that the claim is procedurally barred. The Court need not reach the former contention,[18] in that agrees with the latter.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

---

[17] State v. James, 99-KA-1482, at 1-4 (La. App. 4th Cir. Sept. 27, 2000) (unpublished); State Rec., Vol. I of II.

[18] Nevertheless, the Court notes that there may some merit to the state's contention that the record's failure to indicate that petitioner was arraigned was due to a clerical error. While the docket master does not indicate entry of a plea, and no minute entry is contained within the record for that hearing, the trial court stated to the jury at the April 20, 1998 trial that petitioner pled not guilty to the bill of information on December 5, 1997. State Rec., Vol. I of II, transcript of April 20, 1998, p. 4.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal held:

> [T]he record does not indicate that defendant was arraigned, or that he ever entered a plea. However, "[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty." La.C.Cr.P. art. 555.[19]

Because article 555 is clearly a state procedural rule independent of the merits of the federal claim, this Court need only address whether it is "adequate." "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule around the time it was applied. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997). Here, petitioner clearly has not met his burden, in that he makes no attempt to establish that article 555 was not strictly or regularly followed. Moreover, this Court's research indicates that Louisiana state courts strictly and regularly invoke article 555. See, e.g., State v. Charles, 790 So.2d 705, 712 (La. App. 5th Cir. 2001); State v. Martin, 788 So.2d 1, 7 (La. App. 4th Cir. 2000); State v. Crowell, 773 So.2d 871, 876 (La. App. 4th Cir. 2000), writs denied, 802 So.2d 622 (La. 2001) and 826 So.2d 1112 (La. 2002); State v. Williams, 769 So.2d 629, 638 (La. App. 4th Cir. 2000); State v. Flanagan, 744 So.2d 718, 731 (La. App. 2nd Cir. 1999); State v. Paris Properties, Inc., 503 So.2d 594, 596 (La. App. 4th Cir. 1997).

When, as in the instant case, the state procedural rule is found to be independent and

---

[19] State v. James, 99-KA-1482, at 4; State Rec., Vol. I of II.

adequate, "federal *habeas* review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). In his federal application, petitioner makes no attempt whatsoever to establish cause for the procedural default. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" requirement, he can overcome the procedural bar only by showing a fundamental miscarriage of justice. The United States Fifth Circuit Court of Appeals has held:

> [A] fundamental miscarriage of justice may be demonstrated by a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To satisfy this standard, a petitioner must show that he is actually innocent.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citation omitted); see also Finley, 243 F.3d at 220 ("Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."). In his federal application, petitioner points only to legal errors that allegedly occurred in his criminal proceedings. He does not even allege,

much less show, that he is actually innocent of the underlying crime.[20] Accordingly, petitioner has not demonstrated that the application of the procedural bar to the instant claim would result in a fundamental miscarriage of justice.

In light of the foregoing, petitioner's claim that he was not arraigned is procedurally barred in this federal *habeas corpus* proceeding.[21]

### Double Jeopardy

Petitioner further contends that his trial and conviction under bill of information number 390-919 violated the Double Jeopardy Clause of the United States Constitution because the state prosecuted him for the same acts that were charged in the bill of information in case number 388-996. Those prior proceedings terminated when the state entered a *nolle prosequei*.

In ruling on an application for a supervisory writ filed by petitioner, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, holding: "Relator's subsequent trial on a charge that had previously been nolle prosequied does not violate the prohibition against double jeopardy."[22]

---

[20] Additionally, the Court notes that the evidence against petitioner was overwhelming.

[21] In any event, however, the Court notes that it is well established that formal arraignment is not constitutionally required if it is shown that the defendant knew what he was accused of and is able to defend himself adequately. Dell v. Louisiana, 468 F.2d 324, 325 (5th Cir. 1972). It is noteworthy that (1) petitioner indicates in his federal petition, as well as his state application for post-conviction relief, that he pled not guilty to the crime charged, and (2) that bill of information 390-919, under which petitioner was tried, superceded bill of information 388-996, which was dismissed on July 21, 1997, when the State entered a *nolle prosequi*. Petitioner pled not guilty at his arraignment on bill of information 388-996 on April 16, 1997. See State Rec., Vol. II of II, Docket Sheet, 388-996. To the extent that petitioner is suggesting that he was not aware of the charges against him, he is being, at best, disingenuous.

[22] State v. James, No. 2001-K-2235 (La. App. 4th Cir. Jan. 11, 2002) (unpublished). As previously noted, the state has not filed with this Court the state records relating to that writ application; however, a copy of the intermediate appellate court's ruling is attached to petitioner's

That ruling is correct.

Petitioner's Double Jeopardy claim fails because jeopardy never attached in case number 388-996. "[J]eopardy does not attach ... until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." Serfass v. United States, 420 U.S. 377, 388 (1975) (internal quotation marks omitted). "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence." Id. (citations omitted). The applicable threshold was never reached in case number 388-996. In that case, the minute entry of July 21, 1997, states in its entirety:

> Defendant James was present for Trial with Counsel Keith Lewis. Defense announced its readiness to proceed to Trial. State filed written Motion for Continuance and court denied. State thru ADA David Weilbaecher entered a Nolle Prosse in this matter. Court ordered Defendant released from all bond obligations in this matter only.[23]

Because petitioner was never put to trial before the trier of fact on the earlier bill of information, he was never put in jeopardy under case number 388-996. Serfass, 420 U.S. at 389 (rejecting petitioner's argument that jeopardy attached when trial judge granted defendant's pre-trial motion to dismiss the indictment); see also Dortch v. United States, 203 F.2d 709, 710 (6th Cir. 1953) ("It is ... settled law that a *nolle prosequi* and a dismissal without prejudice do not bar a second prosecution for the same offense ...."). Accordingly, his subsequent prosecution and conviction under the superceding bill of information did not violate the Double Jeopardy Clause, and, therefore

---

federal application. Rec. Doc. 2. When petitioner again asserted his double jeopardy claim in his state post-conviction application, the intermediate appellate court denied the claim as repetitive pursuant to La.C.Cr.P. 930.4. State v. James, No. 2002-K-1581 (La. App. 4th Cir. Aug. 23, 2002) (unpublished); State Rec., Vol. II of II.

[23] A copy of the minute entry is attached to petitioner's federal application. Rec. Doc. 2.

his claim is without merit.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 19 day of July, 2004.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE